## IN THE COURT OF APPEALS OF THE STATE OF IDAHO

### Docket No. 38866

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2013 Opinion No. 10 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: February 12, 2013 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| MANUEL GARCIA VELASCO, | ) | |
| | ) | |
| Defendant-Appellant. | ) | |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Bingham County. Hon. Darren B. Simpson, District Judge.

Judgment of conviction and sentence for lewd conduct with minor child under sixteen, <u>vacated</u> and case <u>remanded</u> for resentencing.

Sara B. Thomas, State Appellate Public Defender; Justin M. Curtis, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Russell J. Spencer, Deputy Attorney General, Boise, for respondent.

_____

GRATTON, Judge

Manuel Garcia Velasco appeals from the district court's judgment of conviction and sentence for lewd conduct with minor child under sixteen, Idaho Code § 18-1508. We vacate and remand for resentencing.

### I.

### FACTUAL AND PROCEDURAL BACKGROUND

Prior to conviction, the district court ordered a competency evaluation pursuant to I.C. § 18-211. The evaluation found that Velasco was competent to stand trial. However, the evaluation also suggested that Velasco exaggerated his neurocognitive difficulties and that his performance suggested a "malingered cognitive dysfunction." At a change of plea hearing,

1

Velasco alleged that he was incapable of remembering the crime. He then entered an *Alford* plea.[1]

The district court ordered a psychosexual evaluation (PSE), which was performed by the same doctor who performed the competency evaluation. During the PSE, Velasco underwent a polygraph examination, which alerted the doctor that he was being deceptive in many of his answers. After being confronted with the results of the polygraph examination, Velasco admitted that he remembered the crime and admitted that he sexually abused the victim. The written PSE included a section which summarized the competency evaluation and also reported on the information learned as a result of the polygraph.

At sentencing, defense counsel and the State recommended a sentence of probation. While questioning defense counsel about the recommendation, the district court referenced the competency evaluation and the competency evaluation summary contained in the PSE. The district court then imposed and executed a unified sentence of thirty years with ten years determinate.

Velasco appealed, but his appellate counsel failed to file an appellate brief and the appeal was dismissed. However, the district court granted Velasco post-conviction relief and reentered the judgment of conviction. Velasco timely appeals.

## II.

## ANALYSIS

Velasco claims that the district court violated his Fifth Amendment privilege against self-incrimination by considering for sentencing purposes information contained in his competency evaluation report. The Fifth Amendment to the United States Constitution guarantees that "No person . . . shall be compelled in any criminal case to be a witness against himself." This safeguard against compelled self-incrimination applies to both the guilt and penalty phases of a trial. *Mitchell v. United States*, 526 U.S. 314, 325-27 (1999); *Estelle v. Smith*, 451 U.S. 454, 462-63 (1981); *Estrada v. State*, 143 Idaho 558, 563-64, 149 P.3d 833, 838-39 (2006); *State v. Lankford*, 116 Idaho 860, 871-72, 781 P.2d 197, 208-09 (1989). A competency evaluation of one charged with a crime ordinarily does not implicate the Fifth Amendment because any disclosures made by the defendant are not used against him but are used only for the neutral,

---

[1]     *See North Carolina v. Alford*, 400 U.S. 25 (1970).

limited purpose of determining whether he is competent to stand trial. *See Estelle*, 451 U.S. at 465. Fifth Amendment rights come into play, however, if disclosures made during a competency evaluation, or medical conclusions derived from such disclosures, are later used against the defendant at either the guilt or penalty phase of the proceedings. *Id. See also Estrada*, 143 Idaho at 564, 149 P.3d at 839 ("Incrimination is implicated . . . when punishment could be enhanced as a result of the defendant's statements."). Consequently, statements made by an accused during a competency evaluation and derivative psychiatric opinions generally may not be admitted against the individual for sentencing purposes unless the defendant was advised of the right against self-incrimination and waived those rights. *Estelle*, 451 U.S. at 469; *State v. Jockumsen*, 148 Idaho 817, 820, 229 P.3d 1179, 1182 (Ct. App. 2010).

Velasco did not object to the district court referencing his competency evaluation or the summary thereof during sentencing. He therefore asserts the error is fundamental in order to obtain appellate review. Generally, issues not raised below may not be considered for the first time on appeal. *State v. Fodge*, 121 Idaho 192, 195, 824 P.2d 123, 126 (1992). Idaho decisional law, however, has long allowed appellate courts to consider a claim of error to which no objection was made below if the issue presented rises to the level of fundamental error. *See State v. Field*, 144 Idaho 559, 571, 165 P.3d 273, 285 (2007); *State v. Haggard*, 94 Idaho 249, 251, 486 P.2d 260, 262 (1971). In *State v. Perry*, 150 Idaho 209, 245 P.3d 961 (2010), the Idaho Supreme Court abandoned the definitions it had previously utilized to describe what may constitute fundamental error. The *Perry* Court held that an appellate court should reverse an unobjected-to error when the defendant persuades the court that the alleged error: (1) violates one or more of the defendant's unwaived constitutional rights; (2) the error is clear or obvious without the need for reference to any additional information not contained in the appellate record; and (3) the error affected the outcome of the trial proceedings. *Id.* at 226, 245 P.3d at 978.

We start by discussing whether a constitutional violation occurs when a summary of a competency evaluation is included in a PSE report that the court relies on for sentencing purposes. The United States Supreme Court has held that competency evaluations used against the defendant implicate the Fifth Amendment in certain circumstances. *Estelle*, 451 U.S. at 466. In *Estelle*, the court ordered a psychiatrist to examine the defendant in order to determine his competency to stand trial. The psychiatrist determined he was competent. The trial proceeded

3

and resulted in a guilty conviction. During the sentencing hearing, the prosecution called the psychiatrist to the stand to testify regarding the competency evaluation. The psychiatrist testified that the defendant was a very severe sociopath and would continue his previous behavior. The psychiatrist was the only witness for the State during the sentencing hearing. The defendant was sentenced to death. The Supreme Court granted certiorari to review the case and held that the defendant's Fifth Amendment was implicated because the psychiatrist's testimony resulted in statements by the defendant being used against him in order to obtain the death penalty. *Id.* at 464-69.

Likewise, this Court has held that using competency evaluations against a defendant during sentencing is a violation of the Fifth Amendment. *Jockumsen*, 148 Idaho at 822, 229 P.3d at 1184. In *Jockumsen*, competency evaluations were attached to the presentence investigation report (PSI). This Court determined that the competency evaluations were "improperly placed before the court as attachments to the PSI." *Id.* at 821, 229 P.3d at 1183. Because the competency evaluations were used against Jockumsen at his sentencing hearing, his Fifth Amendment rights were implicated. In a footnote, this Court also suggested the discontinuance of the practice of attaching competency evaluations to PSIs. *Id.* n.1.

In this case, we determine that Velasco's Fifth Amendment privilege against self-incrimination was implicated because the findings from his competency evaluation were included in the PSE and used against him at sentencing. In the PSE, the doctor included a section entitled, "PRIOR COMPETENCY EVALUATION FINDINGS." This section explained that the doctor previously evaluated Velasco to determine his competency to stand trial and provided a summary of the findings of that evaluation. The doctor's summary of his competency evaluation in the PSE is akin to attaching the actual competency evaluation to a PSI. First, the summary of a competency evaluation and the actual competency evaluation contain very nearly the same information and findings, only the summary is more concise.[2] Second, both PSEs and

---

[2]     The State claims that the PSE's summary of the competency evaluation constitutes findings of the PSE. Therefore, the State asserts that the district court could properly consider the information in the competency evaluation summary. We disagree. The summary of the competency evaluation was included at the beginning of the PSE as a review of the doctor's prior evaluation, not as findings of the PSE. The conclusions and recommendations of the PSE do not refer to any of the information from the competency evaluation. Therefore, we do not further address this claim.

4

PSIs are considered by the court for sentencing purposes. *See* I.C. § 18-8316; Idaho Criminal Rule 32. As in *Estelle*, this results in the defendant's own statements being used against him in the sentencing hearing. Indeed, in this case, the district court referred to both the summary of the competency evaluation contained in the PSE and referred to the actual competency evaluation. Consequently, we determine that Velasco's Fifth Amendment privilege against self-incrimination was violated.[3] As we stated in *Jockumsen*, if it is a practice to summarize or attach competency evaluations in PSEs, the practice should be discontinued.

We must next determine whether the constitutional violation was clear or obvious from the record. The State contends that it is unclear from the record whether defense counsel's failure to object was a tactical decision. The State argues that the principal information from the competency evaluation was known to the district court independent of the competency evaluation and the summary thereof. In essence, the State argues that the district court could have concluded on its own that Velasco had feigned an inability to recall the crime at the time of the *Alford* plea, due to his clear recollection and admission after being confronted with the polygraph results. This, the State implies, is no different than the diagnosis of "malingered cognitive dysfunction" from the competency evaluation. Thus, the State reasons that defense counsel likely made a tactical decision not to object because the court was possessed of similar non-objectionable information.[4] The State also argues that because the court could have independently concluded that Velasco had faked an inability to recall, any reliance on similar information from the PSE summary of the competency evaluation was harmless.

---

[3]     The State claims that Velasco waived his Fifth Amendment privilege as to the PSE by failing to remain silent during the evaluation. Since Velasco waived his privilege as to the PSE, and since the PSE contains findings from the competency evaluation, the State asserts that Velasco thereby waived his privilege as to the competency evaluation summary contained in the PSE. We disagree that a person can waive his Fifth Amendment privilege during the competency evaluation simply because the doctor included those findings in a PSE. Therefore, we do not further address this claim.

[4]     The State further contends that defense counsel may not have objected to the use of the competency evaluation in order to preserve the use of the favorable PSE. As a result of the PSE, defense counsel and the prosecution recommended a sentence of probation. By objecting to the use of the competency evaluation in the PSE, the State argues that Velasco could have risked the loss of the favorable PSE. However, defense counsel could have objected to any references to the competency evaluation without objecting to the entire PSE, thereby preserving the favorable recommendations in the PSE.

Velasco claims that the district court significantly relied upon the information in the competency evaluation beyond and apart from any independent conclusions the court could have reached. In addition, Velasco asserts that the reliance on such information affected the sentence imposed.

As noted, Velasco initially denied recall of the charged events. The competency evaluation stated that Velasco had neurocognitive difficulties but expressed concerns about the nature and extent of his cognitive abilities because he had not put forth a consistent and complete effort on testing procedures. The competency evaluation suggested that Velasco exaggerated his neurocognitive difficulties and that his testing performance showed a "malingered cognitive dysfunction." After being confronted with the results of the polygraph, Velasco acknowledged recall of the events and ultimately admitted the allegations. At sentencing, defense counsel asked for probation and attempted to minimize Velasco's prior deception arguing that the sexual misconduct allegations were "a hard matter to admit," and that Velasco was repressing his guilt. In response, the court engaged counsel as follows:

| | |
|---|---|
| COURT: | [Defense counsel], do you really think a sentence of probation is appropriate given the age of the victim at the time of the offense? |
| [COUNSEL]: | I do, Your Honor, and-- |
| COURT: | Especially where it appears that Dr. Lindsey, to some degree, really pegged his neurocognitive function at the beginning where he figured that he was--what was the term he used? Let's see if I can find it here. I want to say manipulating; but I don't think that was the actual term he used. |
| [COUNSEL]: | Are you, are you thinking of the prior competency evaluation? |
| COURT: | Yes. |
| [COUNSEL]: | I think that's on page 2 of the psychosexual. |
| COURT: | Oh, malingering was the term that he used, right? |
| [COUNSEL]: | I don't recall him using that term here in the psychosexual; but I believe he-- |
| COURT: | That was the term he used initially, and that's why we jumped through all these hoops with him. |

6

Thereafter, the prosecution clarified which evaluation the term malingering originated:

> [PROSECUTION]: Your Honor, before I share my recommendation, I would note on Dr. Lindsey's 18-211 report dated March 10, 2008, at the bottom of page 3--it's the very last line on that--it indicates that Mr. Velasco's responses and performance under the condition were inconsistent and suggested of a malingered cognitive dysfunction. . . . And, and I think that's kind of what the Court was referring to earlier.

The district court further relied on the competency evaluation by referencing the notation that Velasco put forth inconsistent and inadequate effort on the testing procedures:

> COURT: The other thing that was of concern of Dr. Lindsey and a concern of this Court, as we've discussed, is that given your neurocognitive functioning, you tend to play upon that and exaggerate that deficit to more than what it really is, which may have a bearing on how treatable you are.
>
> . . . .
>
> COURT: In addition, part of my concern that I have with, with your evaluation, as indicated by Dr. Lindsey on page 2, is that we still have some concerns about the nature and severity and extent of your cognitive abilities because you didn't put forth a consistent and adequate effort on those testing procedures.

The medical diagnosis and the competency evaluation's notation that Velasco put forth inconsistent and inadequate effort on the testing procedures were relied on by the court to conclude something beyond what defense counsel argued--that Velasco's guilt was hard to admit. The district court relied on the medical opinion to conclude that Velasco had malingered cognitive dysfunction instead of simply noting that Velasco denied the allegations and then admitted them. In other words, while the district court, as the State suggests, could have independently concluded that Velasco lied on this occasion, the district court instead relied on the competency evaluation to determine that Velasco possessed a trait of exaggerating neurocognitive dysfunction, something the district court could only conclude from the competency evaluation information. Based upon this information, the Court clearly expressed reservations about Velasco's treatability, a significant sentencing concern. The information which the district court possessed independently and the information from the competency evaluation were significantly different and, thus, do not support the State's claims regarding defense counsel's failure to object being a tactical decision. Moreover, considering the probation

recommendations from the PSE, the prosecutor, and defense counsel against the sentence received amid the district court's reservations regarding treatability, Velasco has demonstrated a reasonable probability that the error affected sentencing and, therefore, was not harmless.

### III.

### CONCLUSION

The district court erred by relying on Velasco's competency evaluation during sentencing. Therefore, we vacate the district court's sentence and remand for resentencing.

Chief Judge GUTIERREZ and Judge MELANSON **CONCUR.**