# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 42872

| | | |
|---|---|---|
| STATE OF IDAHO, | ) | 2016 Unpublished Opinion No. 654 |
| | ) | |
| Plaintiff-Respondent, | ) | Filed: August 24, 2016 |
| | ) | |
| v. | ) | Stephen W. Kenyon, Clerk |
| | ) | |
| KYLE V. JORGENSEN, | ) | THIS IS AN UNPUBLISHED |
| | ) | OPINION AND SHALL NOT |
| Defendant-Appellant. | ) | BE CITED AS AUTHORITY |
| | ) | |

Appeal from the District Court of the Seventh Judicial District, State of Idaho, Fremont County. Hon. Gregory W. Moeller, District Judge.

Order denying Idaho Criminal Rule 35 motion, affirmed.

Erik D. Fredericksen, Interim State Appellate Public Defender; Brian R. Dickson, Deputy Appellate Public Defender, Boise, for appellant.

Hon. Lawrence G. Wasden, Attorney General; Mark W. Olson, Deputy Attorney General, Boise, for respondent.

_____

HUSKEY, Judge

Kyle V. Jorgensen appeals from the district court's denial of his Idaho Criminal Rule 35 motion for reduction of sentence. Jorgensen contends the district court imposed his sentence in an illegal manner because the district court violated his Fifth Amendment right against self-incrimination when it based its sentencing decision on Jorgensen's risk assessment. The State contends the district court lacked jurisdiction because the court did not rule on the I.C.R. 35 motion within a reasonable time beyond the 120-day filing deadline. We hold the district court had jurisdiction to rule on Jorgensen's I.C.R. 35 motion; the district court did not violate Jorgensen's Fifth Amendment right to remain silent by relying on the risk assessment to fashion the sentence; and the district did not impose a longer sentence than the one agreed to by the parties because of Jorgensen's silence. Thus, the district court did not err when it denied Jorgensen's I.C.R. 35 motion.

1

# I.

## FACTUAL AND PROCEDURAL BACKGROUND

Jorgensen was accused of performing oral sex on a 10-year-old boy, touching the boy's genitals, and showing him pornography. Although the victim did not disclose the events until several years later, during a confrontation call arranged by police officers, Jorgensen admitted to sexually abusing the victim. Jorgensen was charged with felony lewd conduct with a minor under sixteen. I.C. § 18-1508. Jorgensen pled guilty to an amended charge of sexual abuse of a minor under sixteen years of age. I.C. § 18-1506.

As part of the plea agreement, the parties agreed to recommend the district court retain jurisdiction and impose a determinate sentence of no more than two years. If the court chose not to retain jurisdiction, the parties would recommend a unified sentence of five years, with two years determinate. The district court was unwilling to enter a binding plea agreement with respect to the recommendation that it impose an indeterminate sentence of no more than three years. The district court stated:

> I don't think I can agree to limit the indeterminate portion of the sentence to only three years.
> Typically on sex offense cases, and certainly there's a wide variety, but it's very unusual to have a sex offense case with only a five-year total unified sentence. Typically . . . because of the interest of protecting society . . . it's very common that the [indeterminate portion of the sentence] is much longer than five years.

In response, defense counsel stated, "[w]e can stipulate, your Honor, that when it comes to sentencing, if the Court believes a longer [indeterminate] period is appropriate, then we have no objection." The district court then asked Jorgensen if he understood the discussion. The dialogue was as follows:

> COURT: Do you understand the plea agreement after we modified it here in court?
> DEFENDANT: Yes.
> . . .
> COURT: And do you understand that if there's an underlying sentence imposed, [the attorneys are] going to recommend that [the court] impose a sentence of no more than two years fixed and three years indeterminate.
> DEFENDANT: Yes.
> COURT: And do you understand that the Court is not bound by any of those recommendations except one, which is that the Court agrees that whatever underlying sentence that I impose, it will be no more than two years minimum fixed. Understood?

DEFENDANT: Yes.
COURT: Which means that after I hear the recommendations, I will either, A, decide to retain jurisdiction and impose a sentence of two years fixed and some indeterminate number, or, B, that I will just go ahead and determine that you need to go to prison, in which case you would receive a two-year fixed sentence and a yet to be determined amount of indeterminate time. Do you understand?
DEFENDANT: Yes.
COURT: And is that how you would like to proceed with this matter?
DEFENDANT: Yes.

Upon entry of Jorgensen's guilty plea, the court ordered a psychosexual evaluation of Jorgensen for sentencing. Jorgensen participated in the psychosexual evaluation, but invoked his Fifth Amendment right to remain silent on questions involving his sexual history. The risk assessment concluded Jorgensen was a moderate-to-high risk to re-offend. The district court withdrew its consent to the plea agreement and gave Jorgensen the opportunity to withdraw his guilty plea, which he declined to do. The district court then imposed a unified sentence of fifteen years, with two years determinate.

The judgment of conviction was entered on April 22, 2014. Jorgensen did not file a timely notice of appeal from the judgment of conviction. On July 11, 2014, Jorgensen filed an I.C.R. 35 motion for reduction of sentence alleging the district court imposed his sentence in an illegal manner because the court violated his Fifth Amendment right against self-incrimination. Jorgensen alleged the court's decision to increase the indeterminate portion of the sentence was based on Jorgensen's invocation of his Fifth Amendment right on certain questions during the psychosexual evaluation. The district court denied the motion on November 25, 2014, explaining Jorgensen's silence was not the reason for the length of the indeterminate portion of the sentence. Jorgensen timely appeals from the district court's order denying his I.C.R. 35 motion.

## II.

## STANDARD OF REVIEW

Idaho Criminal Rule 35 allows a district court to correct an illegal sentence or correct a sentence imposed in an illegal manner. *State v. Huffman*, 144 Idaho 201, 203, 159 P.3d 838, 840 (2007). Generally, whether a sentence is illegal or whether it was imposed in an illegal manner is a question of law, over which we exercise free review. *State v. Clements*, 148 Idaho 82, 84, 218 P.3d 1143, 1145 (2009); *State v. Farwell*, 144 Idaho 732, 735, 170 P.3d 397, 400 (2007).

## III.

## ANALYSIS

**A.    The District Court Ruled on Jorgensen's I.C.R. 35 Motion Within a Reasonable Time**

Initially, we address the State's argument that the district court lost jurisdiction to decide Jorgensen's I.C.R. 35 motion because the district court did not act upon the motion within a reasonable time beyond the filing deadline of 120 days.  "A district court does not lose jurisdiction to act upon a timely-filed motion under Rule 35 merely because the 120-day period expires before the judge can reasonably consider and act upon the motion." *State v. Chapman*, 121 Idaho 351, 354, 825 P.2d 74, 77 (1991); *see also United States v. Stollings*, 516 F.2d 1287, 1288-1289 (4th Cir. 1975) (reasoning that strictly following the 120-day rule may prejudice a defendant who filed a timely motion because the trial court may be unable to act upon the motion within the 120-day period and "if the delay flows from the incapacity, the absence or the preoccupation of the judge, its consequences should not be visited upon the [defendant]").  "The reasonableness of any delay by the district court in ruling upon a Rule 35 motion must be evaluated in light of the purposes supporting the 120-day limitation and the reasons for the trial court's delay in each case." *State v. Tranmer*, 135 Idaho 614, 616, 21 P.3d 936, 938 (Ct. App. 2001).  The purpose of the 120-day limit is to ensure that the court does not usurp the responsibilities of the parole officials. *State v. Veloquio*, 141 Idaho 154, 155, 106 P.3d 480, 481 (Ct. App. 2005).

In this case, the district court ruled upon the motion within a reasonable time. Jorgensen's judgment of conviction and sentence were entered on April 22, 2014.  When Jorgensen filed his I.C.R. 35 motion on July 11, 2014, there were forty days left of the 120-day period.  On September 19, 2014, the district court scheduled a hearing for the motion to be held November 25, 2014.  The district court entered an order denying the I.C.R. 35 motion on November 25, 2014.  This Court recognizes that the district court presiding over this case is chambered in Madison County, but is assigned to hear cases in Fremont County on a bi-monthly basis.  As discussed in *Chapman*, a judge's obligation to serve in another district (or county, in this case) can be a legitimate justification for failing to resolve an I.C.R. 35 motion within 120 days. *Chapman*, 121 Idaho at 353, 825 P.2d at 76.  Like in *Chapman*, because the presiding judge did not normally sit in Fremont County and had to coordinate scheduling with one of the attorneys also residing in another county, a two-month delay in ruling on Jorgensen's motion

4

was reasonable. Based on the specific facts of this case, the district court acted within a reasonable amount of time in ruling on the I.C.R. 35 motion; and therefore had jurisdiction to decide the matter.

**B.** **The Record Reveals the Risk Assessment Did Not Incorporate Negative Inferences From Jorgensen's Exercise of His Fifth Amendment Right to Remain Silent**

Jorgensen argues the district court erred by denying his I.C.R. 35 motion to correct a sentence imposed in an illegal manner. Specifically, Jorgensen argues the district court violated his Fifth Amendment privilege against self-incrimination when it relied on the risk assessment in fashioning Jorgensen's sentence. Jorgensen's claim is that because it is "inappropriate to base a determination of future risk on unwarned statements or negative inferences from a decision to stand silent, the district court's reliance on the negative inference incorporated in the risk assessment also violated Jorgensen's Fifth Amendment right." The State argues a review of the record reveals that Jorgensen's sentence was not based upon his decision to assert his Fifth Amendment right because: (1) the risk assessment was based only upon the information Jorgensen provided; and (2) the district court stated on the record that it was not basing its sentencing decision on Jorgensen's silence.

The Fifth Amendment right against self-incrimination applies to psychosexual evaluations. *Estrada v. State*, 143 Idaho 558, 564, 149 P.3d 833, 839 (2006). A defendant's choice to decline participation in a psychosexual evaluation may not be used against the defendant at sentencing. *Id*. This Court has made clear that a district court violates a defendant's Fifth Amendment right "if disclosures made during a competency evaluation, or medical conclusions derived from such disclosures, are later used against the defendant at either the guilt or penalty phase of the proceedings." *State v. Jockumsen*, 148 Idaho 817, 820, 229 P.3d 1179, 1182 (Ct. App. 2010); *see also State v. Velasco*, 154 Idaho 534, 537, 300 P.3d 66, 69 (Ct. App. 2013) (the Fifth Amendment prevents use of statements made by an accused during a competency evaluation and derivative psychiatric opinions). While these cases deal with the use of statements actually made, the United States Supreme Court has additionally held that no negative inference involving a factual determination regarding the circumstances and details of the crime may be drawn from a defendant's failure to testify. *Mitchell v. United States*, 526 U.S. 314, 327-28 (1999).

Neither Idaho law, nor the United States Supreme Court have decided the issue of whether a court may draw an adverse inference against a defendant from the defendant's silence

at sentencing where such inference does not involve a factual determination regarding the circumstances and details of the crime. *See White v. Wood*, ___ U.S. ___, 134 S. Ct. 1697, 1702 (2014). Jorgensen requests this Court extend *Estelle v. Smith*, 451 U.S. 454 (1981), arguing since a defendant's "statements cannot be used to establish future dangerousness, drawing the negative inference about future risk from the defendant's decision to stand on his rights is similarly impermissible." Jorgensen wants this Court to recognize that the district court's decision to rely on the psychosexual evaluation's risk assessment, which he argues included his invocation of his Fifth Amendment right, is contrary to existing precedent. *Estelle* holds the Fifth Amendment prohibits the use of testimony taken during a defendant's court-ordered psychiatric evaluation without *Miranda*[1] warnings to establish a defendant's future dangerousness. *Estelle*, 451 U.S. at 468. However, we need not decide whether *Estelle* prohibits the use of a defendant's silence on a psychosexual evaluation to establish future dangerousness because the record is clear that the risk assessment in this case was not based on Jorgensen's silence.

In support of his argument, Jorgensen points to the court's statement that "the Court recognizes that the risk assessment is likely higher than it would have been but for his failure to fully cooperate with some questions." However, review of the risk assessment indicates the district court misread the conclusions of the risk assessment. The risk assessment states:

> Despite the fact that [Jorgensen] has not yet produced a fully nondeceptive polygraph, I am able to estimate Mr. Jorgensen's likelihood of future sexual offending with actuarial tools, including the Static-99R. However, in the absence of nondeceptive full-disclosure polygraphy, what follows are considered lower-bound estimates of the risk in Mr. Jorgensen's case, i.e., his *minimum* risk level.

The evaluator clarified that "were the entire story of [Jorgensen's] sexual abuse against the index victim and/or his sexual history confirmed with polygraphy these risk estimates could well be much higher . . . or they might remain as reported here."

The evaluator came to the ultimate conclusion that Jorgensen was, at a minimum, a moderate-to-high risk to re-offend based on the limited information Jorgensen provided, not because of his silence. The questions that Jorgensen did answer provided the following information for the evaluator to use in making his risk assessment: (1) Jorgensen's MMPI test showed he answered questions in a way that "evidenced an effort to falsely portray [himself] in

---

[1]     *See Miranda v. Arizona*, 384 U.S. 436 (1966).

6

an unrealistically positive light"; (2) Jorgensen's AASI test showed "some evidence of a strong pedophilic interest in school age boys"; and (3) the questions Jorgensen answered on the polygraph showed he "continue[d] to test deceptive." Thus, the evaluator had sufficient information to determine Jorgensen's risk regardless of Jorgensen's invocation of his Fifth Amendment privilege. Therefore, the psychosexual evaluation risk assessment was not based on Jorgensen's exercise of his Fifth Amendment right, but rather on the information gathered from the questions Jorgensen did answer. As such, the district court did not error in relying upon the risk assessment to make its sentencing determination.

## C.    The District Court's Sentence Was Proper

Next, Jorgensen argues the district court withdrew its consent to be bound by the plea agreement and did not retain jurisdiction because Jorgensen exercised his Fifth Amendment right to remain silent. As a result, Jorgensen contends the district court erroneously imposed a longer sentence than the one to which the parties originally agreed. The State argues the record makes clear that the district court did not use Jorgensen's silence against him at sentencing.

In support of his argument, Jorgensen relies on *United States v. Antelope*, 395 F.3d 1128 (9th Cir. 2005). In *Antelope*, the court required Antelope to submit to random polygraph evaluations as a term of his probation. *Id.* at 1131. Antelope failed to comply with several probation conditions and repeatedly refused to submit to polygraph evaluations because the counselor had disclosed other defendant's criminal polygraph admissions to authorities and told Antelope he would likely disclose any criminal polygraph admissions to authorities. *Id*. at 1135. The district court revoked probation and sentenced Antelope to an additional ten months of incarceration. *Id*. at 1131-32. The ultimate holding in *Antelope* is simply that Antelope's privilege against self-incrimination was violated because he was sentenced to a longer prison term for refusing to make disclosures during his sex-offender treatment which likely would have exposed him to additional criminal charges.

Jorgensen argues that like in *Antelope*, the district court withdrew from the binding plea agreement primarily because Jorgensen did not fully participate in the psychosexual evaluation. However, as noted above, the district court was never bound by the indeterminate sentence; thus, there was no change in the court's position vis-a-vis the indeterminate portion of the sentence either before or after the court's withdrawal from the plea agreement. Because Jorgensen has

7

only challenged the indeterminate portion of his sentence, the district court's reasoning for withdrawing its consent to the fixed portion of the sentence is irrelevant.

Additionally, we find the Idaho Supreme Court's recent decision in *State v. Jimenez*, ___ Idaho ___, ___ P.3d ___ (June 22, 2016) to be informative. In *Jimenez*, the defendant refused to participate in the psychosexual evaluation and the district court commented it could assume there must be some information the defendant did not want the court to know. *Id.* The district court then noted that although it could draw an adverse inference from the defendant's non-participation, the defendant's silence played no factor in the sentence. *Id.* The district court recognized it had to make a sentence based on information it had, not on information it did not have. *Id.* The Supreme Court reasoned although the district court *commented* on the fact that there was a lack of evidence without the psychosexual evaluation, the record indicated the district court's sentencing decision was not based on the defendant's refusal to submit to a psychosexual evaluation. *Id.*

In this case, the district court stated, "if the defendant isn't going to cooperate in answering questions about other offenses, I can only conclude that retained jurisdiction would be pointless in further ascertaining risk." Jorgensen argues this shows the district court did not retain jurisdiction because Jorgensen invoked his Fifth Amendment rights. However, similar to *Jimenez*, a review of the record reveals the district court simply commented on Jorgensen's lack of participation because the district court followed that comment with an explanation for not retaining jurisdiction: "[Jorgensen's] a high moderate risk to reoffend. So I find that I'm compelled to act in the interest of protecting the community . . . ." Furthermore, in denying Jorgensen's I.C.R. 35 motion, the district court explained, "it wasn't the lack of cooperation that was the reason for my sentencing, it was the assessment that was the result." The court also stated, "when there's a higher risk assessment . . . there is a need for a longer period of indeterminate time so that [Jorgensen] can be properly supervised and risk managed if he was released on probation." Thus,

> [t]he reason for the long indeterminate portion of [the] sentence was to protect society. . . . [S]ince his risk assessment was high, then I took very seriously my primary function of sentencing in making sure that I protected society.
>   . . . where [Jorgensen] had a moderate high assessment and there was no indication that it was going to be lower after a rider, I felt like imposing that 13 years indeterminate time was appropriate.

8

Additionally, in commenting on Jorgensen's failure to participate in the psychosexual evaluation, the court made it clear it was not holding Jorgensen's silence against him:

> First of all, the psychosexual evaluator has commented that his ability to fully assess your risk has been severely limited because you only partially cooperated. And, again, I'm not going to hold it against you that you exercised your rights under *Estrada*, but you need to understand that the Court, when I try to decide how to handle these cases, has to very carefully consider what kind of a risk you pose. And there is no reason for me to, at this point, assume the best.

The district court then explained that its sentence was not based on Jorgensen's silence. The district court stated, "I have to sentence you on what I know, not what I don't know. And, unfortunately, limited information doesn't let us make the best conclusions, so we have to do the best we can." The limited information available to the court was the same information available to the evaluator: (1) Jorgensen's MMPI test showed he answered questions in a way that "evidenced an effort to falsely portray [himself] in an unrealistically positive light"; (2) Jorgensen's AASI test showed "some evidence of a strong pedophilic interest in school age boys"; and (3) the questions Jorgensen answered on the polygraph showed he "continue[d] to test deceptive." The district court also noted the mitigating factors present in this case. Thus, when the district court applied the objectives of criminal punishment,[2] it determined that because Jorgensen was a moderate-to-high risk to re-offend, a longer indeterminate portion of the sentence was appropriate. Therefore, the record reveals the district court did not violate Jorgensen's Fifth Amendment right because it did not impose a longer sentence because of Jorgensen's silence but instead, considered the information Jorgensen did provide and imposed a sentence it believed was appropriate. Thus, the district court did not err when it denied Jorgensen's I.C.R. 35 motion.

## III.

## CONCLUSION

For the reasons set forth above, we affirm the district court's denial of Jorgensen's I.C.R. 35 motion.

Chief Judge MELANSON and Judge GUTIERREZ **CONCUR**.

---

[2] The objectives of criminal punishment are protection of society, deterrence of the individual and the public, possibility of rehabilitation, and punishment or retribution for wrongdoing, *State v. Carver*, 155 Idaho 489, 496, 314 P.3d 171, 178 (2013), with the primary objective being the protection of society, *State v. Calley*, 140 Idaho 663, 666, 99 P.3d 616, 619 (2004).